IN THE UNITED STATES DISTRICT COURT FOR
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | NO. 3:21-cr-00288 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| BRYON BROCKWAY | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Bryon Brockway's Motion to Sever (Doc. No. 251) brought under Federal Rule of Criminal Procedure 14(a).[1] The Government filed a response in opposition. (Doc. No. 257). For the reasons discussed below, the motion is DENIED.

### I. BACKGROUND

On July 25, 2022, the grand jury returned a Superseding Indictment charging Defendant Bryon Brockway and three co-defendants, Erik Charles Maund, Adam Carey, and Gilad Peled, with conspiracy to commit murder-for-hire, conspiracy to commit kidnapping, and kidnapping resulting in death. (Doc. No. 127). The charges relate to the alleged kidnapping and murder of two victims in Nashville, Tennessee, in March 2020. Gilad Peled pled guilty. (*See* Doc. No. 210). Brockway, Maund, and Carey are scheduled to be tried together on October 31, 2023. (*See* Doc. No. 260).

Brockway contends a joint trial will deprive him of his Constitutional right to a fair trial because the Government intends to rely on statements by co-defendants Maund and Carey regarding the indicted offenses and matters outside the indictment. Specifically, Brockway cites evidence that in a call initiated by Peled at the behest of law enforcement, Maund agreed to pay Peled and Brockway $150,000 to kill Carey. In the call, Maund does not specifically reference

---

[1] Brockway does not argue misjoinder under Rule 8(b).

Brockway by name, but Peled refers to someone named "Brian." There is no question that neither Brockway nor Carey "had any idea that Peled was talking about him on this call." (Doc. No. 251 at 3 (citing Doc. No. 204)).

Brockway also cites anticipated evidence that Brockway and Carey intended to participate in an unrelated murder-for-hire scheme in the fall of 2021. (*Id.*). Evidence of this scheme includes telephone calls between a government informant and Carey in which Carey explains how to plan the new job, using the "March 2020 murders" as a point of reference. (*Id.*). The Government states that "both Brockway and Carey quickly stated that they would participate in the 'new' murder-for-hire plan for a cost of $60,000 per victim, per participant." (*Id.* (citing Doc. No. 151 (listing statements the Government intends to use at trial))).

## II. LEGAL STANDARD

The motion for severance is governed by Federal Rule of Criminal Procedure 14, which provides:

> **(a) Relief.** If the joinder of offenses or defendants in an indictment … appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief justice requires.
>
> **(b) Defendant's Statements.** Before ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence.

The Supreme Court has explained that there is a preference for joint trials for defendants who are jointly charged in the same proceeding. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also United States v. Cordero*, 973 F.3d 603, 624 (6th Cir. 2020) ("Joint trials are favored[.]") (citation omitted). Joint trials preserve government resources, allow victims to avoid reliving trauma, encourage consistent verdicts, and enable more accurate assessments of relative

culpability. *Samia v. United States*, 599 U.S. ___, 143 S. Ct. 2004 (2023); *United States v. Tisdale*, 980 F.3d 1089, 1094 (6th Cir. 2020) ("It's not just more efficient to have one trial and one set of evidentiary admissions for all defendants at once, but a joint trial also decreases the risk of inconsistent verdicts.") (citations omitted).

As such, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. "The risk of prejudice will vary with the facts of each case," and "less drastic measures, such as limiting instructions, will often suffice to cure any risk of prejudice." *Id*. Motions for severance under Rule 14 fall under the "sound discretion of the district court." *Id*. at 541.

### III. ANALYSIS

Brockway argues he should be tried separately because: (1) the jury will be unable to separate evidence of the phone call between Peled and Maund and evidence of his and Carey's agreement to commit a separate murder-for-hire in the fall of 2021 which will result in a "spillover" effect; (2) the possibility of antagonistic defenses will result in prejudice; and (3) anticipated testimony regarding statements by Maund and Carey violate his rights under Confrontation Clause.

The Court considered similar arguments raised by Maund and Carey and found that severance was not warranted. (Doc. No. 176). Brockway contends the United States' 404(b) Notice "raises issues not specifically addressed by the Court or the defendants at the time the initial motions were litigated." (*See* Doc. No. 251 at 2). The Court does not see any new issues that were not addressed by the previous order. However, Brockway's concerns are specific to his right to a fair trial and are addressed below.

**A. Spillover**

3

"A spillover of evidence between counts does not require severance unless there is 'substantial,' 'undue,' or 'compelling' prejudice." *Thomas v. United States*, 849 F.3d 669, 676 (6th Cir. 2017) (citing *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014), and *United States v. Warner*, 671 F.2d 1189, 1196 (6th Cir. 1992)).

Brockway argues he must be tried separately because the evidence of the December 2022 call between Maund and Peled would not be admissible in a separate trial and has no probative value as to whether Brockway committed the charged offenses. In addition, he contends the evidence of a fall 2021 murder-for-hire agreement in which he and Carey refer to "March 2020 murders," is "convoluted and cryptic," confusing to the jury, and not probative of the issues.

The Court is not persuaded that the possibility of "spillover" evidence requires Brockway to be tried separately from his co-defendants. As stated in the Court's previous ruling on Maund's and Carey's motions to sever, joint trials of multiple defendants are favored, and the spillover of evidence from one defendant to another does not require severance as juries are presumed to be capable of sorting out the evidence and considering the case of each defendant separately. (Doc. No. 176 at 5 (citing *United States v. Cordero*, 973 F.3d 603 (6th Cir. 2020), and *United States v. Swift*, 809 F.2d 320, 323 (6th Cir. 1987) (same))).

### B. Antagonistic Defenses

"Antagonistic defenses arise when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Harris*, 9 F.3d 493, 501 (6th Cir.1993). "[I]n order to prevail on a motion to sever, a defendant must show that the antagonism will mislead or confuse the jury." *United States v. Darden*, 346 F. Supp. 3d 1096, 1128 (M.D. Tenn. 2018) (quoting *United States v. Weiner*, 988 F.2d 629, 634 (6th Cir. 1993)). "Hostility among defendants or the attempt of one defendant to save himself by inculpating another does not require that defendants be tried

4

separately." *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014) (citation omitted); *United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988) ("The mere fact that each defendant 'points the finger' at another is insufficient[.])." "In sum, 'to prevail on a motion for severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever.'" *Darden*, 346 F. Supp. 3d at 1128 (quoting *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005))

Brockway asserts his codefendants will likely argue that the others are guilty, and they are not. (Doc. No. 251 at 9). He contends this is analogous to the circumstances in *United States v. Crawford*, in which each defendant in a prosecution for illegal possession of a firearm denied ownership of the firearm and claimed that it belonged to the other defendant. 581 F.2d 489, 491 (5th Cir. 1978).

But, unlike *Crawford* where acceptance of one defense required rejection of the other, acceptance of Brockway's defense that he had no part in the charged crimes does not require the jury to conclude that the other co-defendants are guilty and vice versa. In other words, the defense that is merely implicating co-defendants is not mutually antagonistic. And Brockway has not shown that the anticipated antagonism between the co-defendants will mislead or confuse the jury. *See Horton*, 847 F.2d at 317 (holding that pointing the finger at the other co-defendant is insufficient to mandate severance where defendant has not shown antagonism will confuse the jury). Accordingly, the possibility that the codefendants will point the finger at each other does not warrant separate trials.

### C. *Bruton* and the Confrontation Clause

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const., Amend. VI. Brockway argues that the admission of statements made by Maund and Brockway violate his rights under the Confrontation Clause. Brockway asserts that severance is required because the Government intends to introduce statements of Maund and Carey that are of such a nature that they cannot be redacted to avoid implicating him.

The Court disagrees that severance is necessary. As with the concerns of Maund and Carey, Brockway's rights under the Confrontation Clause are upheld by redacting the statements to avoid directly implicating him and providing the jury an appropriate limiting instruction. As the Supreme Court recently stated, "[t]he Confrontation Clause ensures that defendants have the opportunity to confront witnesses against them, but it does not provide a freestanding guarantee against the risk of potential prejudice that may arise inferentially in a joint trial." *Samia*, 143 S. Ct. at 2018. When a non-testifying codefendant's statement does not directly implicate the defendant, and the court provides a proper limiting instruction, the admission of such a statement does not violate the Confrontation Clause. *Id.*; *see also*, *United States v. Ford*, 761 F.3d 641, 654 (6th Cir. 2014) (a statement that becomes incriminating to the defendant when linked to other evidence adduced at trial does not violate the Confrontation Clause when accompanied by a limiting instruction). To avoid directly implicating the defendant, a statement may be redacted by substituting a neutral reference, such as "other person" for the name of the defendant. *Samia*, 143 S. Ct. at 2017-18.

The Court previously ordered that prior to the use of statements at trial that implicate the Confrontation Clause, "the Government shall share its redactions with Defendants and present the redacted statements to the Court so that the Court can rule on the admissibility." (*See* Doc. No.

176 at 3). The same course of action will address the Confrontation Clause issues raised by Brockway.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Brockway has not demonstrated compelling or substantial prejudice will result from a joint trial. *See Zafiro*, 506 U.S. at 539; *Darden*, 346 F. Supp. 3d at 1125 ("The general problems inherent in joint trial identified by Defendants are legitimate, but they do not mandate severance."). The motion to sever (Doc. No. 251) is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE